

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Cullen B. Vance
County Attorney
Jackson County
Edna, Texas

Dear Sir:

> Opinion No. O-3869
> Re: The Collection and assess-
> ment of taxes in an independ-
> ent school district having
> less than 150 scholastics.

We are in receipt of your letter and the brief enclosed therewith in which you request the opinion of this department upon the questions set out therein as follows:

"1. I wish to know if the Lolita Independent School District has the right to assess and collect their own taxes, or will it be necessary for the county to assess and collect their taxes for the ensuing year.

"2. The Lolita Independent School District has assessed their taxes for the ensuing year and in order to meet the needs of their budget, assessed their taxes 20% higher than the county assessment. I wish to know in event the county should assess and collect the Lolita taxes, could the county give them a higher valuation on property than the State and county valuation?'"

As to the formation of the school district in question you submit the following facts:

"The Lolita-Red Bluff Common School Districts voted consolidation March 15, 1941, and at a special County Board Meeting, April 16, 1941, the said consolidated district was created an Independent School District and named Lolita Independent School District."

Honorable Cullen B. Vance, Page 2

You also submit the information that the last scholastic census shows the independent district in question to have only 125 scholastics.

According to the above quoted information the Lolita Independent School District was formed under the general laws of this State and was not created as an independent school district by special act of the Legislature. Article 2765 is applicable to independent school districts so created and provides as follows:

"All incorporated districts, having each fewer than one hundred and fifty scholastics according to the latest census, shall be governed in the general administration of their schools by the laws which apply to common school districts; and all funds of such districts shall be kept in the county depositories and paid out on order of the trustees approved by the county superintendent."

We are of the opinion that the assessment and collection of taxes by a school district does not come within the term "general administration of their schools" as used in Article 2765, supra. In this conclusion we are greatly influenced by the departmental construction placed on this question over a long period of years by the Attorney General's Department and the Department of Education.

On April 28, 1920, during the administration of Attorney General C. M. Cureton, Assistant Attorney General W. F. Dumas wrote an opinion No. 2218 on this point, which opinion was approved in conference. The opinion was addressed to Miss Annie Webb Blanton, State Superintendent of Public Instruction and read in part as follows:

"We have your letter of the 16th inst., enclosing a communication from Mr. E. E. Bell, Attorney-at-Law, Gatesville, Texas, in which he raises the question as to whether an independent school district containing less than one hundred and fifty scholastics and having its own assessor and collector of taxes is bound by the valuation placed upon property therein for state and county purposes, and you request the opinion of this Department with reference thereto.

"In Avery vs. Cooper, 180 S.W. 734, the Supreme Court (Opinion of Chief Justice Phillips) held that an independent school district having an assessor and collector of its own can assess property for purposes of school taxation at a valuation other than that made for state and county purposes.

"The specific question here presented is:

"'Does this case apply to districts of less than one hundred and fifty scholastics?'

". . .

"With respect to the assessment of property, the levy and collection of taxes, providing for tax and bond elections and issuing bonds on the faith and credit of the district, the laws relating to independent school districts govern and control those independent school corporations that have less than one hundred and fifty scholastics.

"In the construction of all civil statutes the ordinary signification applies to words 'except words of art or words connected with a particular trade or subject matter'. Art. 5502 R.S. 1911. The word 'administration' means 'the act of administering; direction; management; government of public affairs; the conducting of any office or employment. The Century Dictionary & Cyclopedia, Vol. 1, p. 77.

"The term 'general administration of their schools' means, therefore, the management and control of the school system; that is, the employment of teachers, approval of vouchers, etc., and as to such matters in independent school corporations containing less than one hundred and fifty scholastics the laws applicable to common school districts will control.

"If it had been intended by the Legislature that the term 'general administration of their schools' should cover the entire field of taxation and matters of finance, the trustees of an independent school district having less than one

Honorable Cullen B. Vance, Page 4

hundred and fifty scholastics would have no
more power and authority as to such matters
than the trustees of a common school district.
. . .

". . . If it had been intended to place
such independent school districts on the same
plane with common school districts relative to
taxation and matters of finance, the Legisla-
ture would doubtless have expressed such intent
by language clear and unmistakable. . . .

". . .

"In this connection I will state that the
contemporaneous and particular construction of
a statute by those whose duty it is to carry
it into effect, though not absolutely controll-
ing, is entitled to great weight by the court.
State vs. Railway Company, 209 S. W. 821. The
views herein expressed are in keeping with the
construction heretofore given Article 2856 by
the State Department of Education and by the
Attorney General. In Bulletin No. 70 'Public
School Laws' issued by the Department of Educa-
tion in 1917 the following notation will be
found with respect to Article 2856:

"'This provision does not destroy the au-
tonomy of the small independent school districts
with respect to number of members of their school
boards and manner of taxation.'"

The above quoted opinion was expressly referred
to and followed in an opinion dated April 27, 1931, addressed
to Honorable Marvin Scurlock, County Attorney, Jefferson
County, and was written by Assistant Attorney General Scott
Gaines. This second opinion was written after the Legislature
revised the statutes of this State in 1925, which revision
made no change in Article 2763, supra, after it had previous-
ly been construed by the first opinion above quoted.

Based on the above it is the opinion of this de-
partment that the Lolita Independent School District is
governed in the assessment and collection of its taxes by

Honorable Cullen B. Vance, Page 5

the laws relating to independent school districts despite
the fact that the scholastic census of the Lolita Independ-
ent School District is less than 150

In answer to your second question we call your
attention to Article 2792 of the Revised Civil Statutes,
as amended in 1937, which provides as follows:

"When a majority of the Board of Trustees of
an Independent District prefer to have the taxes
of their District assessed and collected by the
County Assessor and Collector, or collected only
by the County Tax Collector, same shall be asses-
sed and collected by said County Officers and
turned over to the Treasurer of the Independent
School District for which such taxes have been
collected. The property of such Districts having
their taxes assessed and collected by the County
Assessor and Collector may be assessed at a great-
er value than that assessed for County and State
purposes, and in such cases the County Tax Assessor
and Collector shall assess the taxes for said Dis-
trict on separate assessment blanks furnished by
said District and shall prepare the rolls for said
District in accordance with the assessment values
which have been equalized by a Board of Equaliza-
tion appointed by the Board of Trustees for that
purpose. If said taxes are assessed by a Special
Assessor of the Independent District and are col-
lected only by the County Tax Collector, the Coun-
ty Tax Collector in such cases shall accept the
rolls prepared by the Special Assessor and approved
by the Board of Trustees as provided in the pre-
ceding Article. When the County Assessor and Col-
lector is required to assess and collect the taxes
of Independent School Districts he shall respective-
ly receive one per cent (1%) for assessing, and
one per cent (1%) for collecting same."

Under the authority of the above quoted article if
the school district chooses to have its taxes assessed and
collected by the county assessor and collector the property
in the school district may be assessed at a greater value
than the property is assessed for State and county purposes.
The same is true where the district uses its own assessor

Honorable Cullen B. Vance, Page 6

and collector or its own assessor and the county collector. We call your attention, however, to the fact that in a case where the taxes are assessed by the county tax assessor and the property of the school district has a greater valuation placed on it than that for State and county tax purposes it is necessary for the county tax assessor to assess the taxes for the school district on a separate assessment blank and he must submit the same to a board of equalization for the district appointed by the board of trustees just as is done by a special district tax assessor.

We trust that the foregoing will be sufficient to advise you in this matter.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Billy Goldberg
Billy Goldberg
Assistant

BO:LM        APPROVED SEP 10, 1941

acting ATTORNEY GENERAL OF TEXAS



APPROVED OPINION COMMITTEE BY CHAIRMAN